IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'23 NOV 28 AM 10:54

| | |
|---|---|
| TA'YRON LA TREZ BAINE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 23-cv-00785-LKG |
| ) | |
| v. ) | Dated: November 28, 2023 |
| ) | |
| NURSE WANDA, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

While incarcerated at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland, self-represented plaintiff Ta'yron LaTrez Baine filed the above-captioned action alleging that Marion Wanda Diaz, RN,[1] refused to provide adequate medical treatment. ECF No. 1. He seeks monetary damages. *Id.* at 4.

Defendant moved to dismiss the Complaint, or in the alternative, for summary judgment in her favor. ECF No. 13. Baine opposed the Motion (ECF No. 15), and Defendant replied (ECF No. 16). The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendant's Motion, treated as one for summary judgment, shall be granted.

### Background

Baine alleges that on the afternoon of December 29, 2022, he was sent to the medical unit for chest pains. Complaint, ECF No. 1 at 4. Although he had experienced heart problems over the past four and a half years, Defendant refused to give him an EKG or any other treatment, in violation of "protocol." *Id.* According to Baine, this was not the first time Defendant refused to treat him. *Id.*

On January 4, 2023, Baine submitted a Request for Administrative Remedy regarding the incident. ECF No. 5-2 at 2. On February 21, 2023, the RCI Warden informed Baine that his

---

[1] The Clerk shall amend the docket to reflect the full and correct name of Defendant.

request was investigated and found to be meritorious. *Id.* at 1. In relevant part, the Warden stated that "[t]he nurse did not follow ERTs protocol and an EKG was not performed when patient complaint of chest pain." *Id.*

Defendant has submitted Baine's medical records, which show that on January 3, 2022, a consultation request for cardiology was submitted on his behalf due to recurrent chest pain. Med. Records, ECF No. 13-5 at 12. At that time, it was noted that Baine had a history of hypertension, bronchitis, and asthma since childhood. *Id.* Notes indicated that in 2018, he was seen and evaluated by a cardiologist due to frequent episodes of chest pain, and results from an ECHO came back as abnormal. *Id.* However, a chest x-ray from November 24, 2021, indicated that he had "no acute cardiopulmonary disease." *Id.*

On January 14, 2022, a consultation request for pulmonology was requested on Baine's behalf, and he saw the pulmonologist on February 14 and March 1, 2022. *Id.* at 1, 7. During the latter visit, Baine's symptoms were stable although he reported shortness of breath at night. *Id.* at 1. Baine was assessed with uncontrolled asthma, and he was prescribed a new inhaler. *Id.* at 1-2. In addition, the pulmonologist requested an ECHO to evaluate for disease progression. *Id.*

Defendant Marion Wanda Diaz, RN, saw Baine for complaints of chest discomfort on March 18, 2022. ECF No. 13-4 at 33. Upon evaluation, Baine's vital signs were normal, and he denied shortness of breath. *Id.* Defendant noted that Baine had a regular apical heart rate, even and unlabored breathing, and normal skin. *Id.* Defendant also acknowledged that Baine's respiratory issues were recently addressed, and that a consultation request for a new ECHO was pending. *Id.* Concluding that Baine had "no cardiac history" at that time, Defendant assessed his condition as a "nonemergency," and Baine returned to his housing unit "in good condition." *Id.*

On March 31, 2022, Baine returned to the medical unit with complaints of breathing difficulties. *Id.* at 30. At that time, he appeared alert and oriented, although his heart rate was 110 and blood pressure was 150/92. *Id.* Baine complained of chest pains, and an EKG was conducted. *Id.* Baine was seen by a provider two weeks later, on April 14, 2022, at which time it was noted that his chest pain was "currently stable," and that he had no further issues after using the new inhaler. *Id.* at 28.

On June 14, 2022, Baine was transferred from RCI to Jessup Correctional Institution ("JCI"). *Id.* at 23. Two days later, he was seen in sick call for complaints of continuing chest

2

pains. *Id.* at 18. On examination, Baine's lungs were clear bilaterally on auscultation, and his heart rate was normal and regular. *Id.* at 19.

On October 6, 2022, Baine returned for a sick call visit, stating "I am having chest pain and I have not had my medications for Asthma or Bronchitis pump." *Id.* at 7. Upon assessment, his vital signs were stable and within normal limits. *Id.* He denied shortness of breath and was not in any form of respiratory distress. *Id.* An EKG was performed and forwarded to the provider for interpretation, and Baine returned to his housing unit in "stable condition." *Id.* at 8.

On December 22, 2022, Baine was transferred back to RCI. ECF No. 13-3 at 33. On December 29, 2022, Defendant saw Baine with complaints of "chest discomfort since lunchtime today about 5 hours ago described as aching around the left breast area." *Id.* at 26. Defendant took Baine's vital signs, all of which were normal. *Id.* Although Baine reported pain at 7/10, Defendant found that he did not have a fever, his skin was warm and dry, and he had a regular apical heart rate, as well as even and unlabored breathing. *Id.* at 26-27. Furthermore, Defendant observed no outward signs of agitation or discomfort such as grimacing or guarding. *Id.* Following the evaluation, Defendant assessed Baine's condition as a non-emergency and educated him to return if his symptoms continued or worsened. *Id.* at 27. Baine departed the dispensary "in good condition to return" to his housing unit. *Id.*

Defendant does not dispute that RCI has a policy requiring an EKG any time a patient reports chest pain or that she did not follow this policy on December 29, 2022. Decl. of Diaz, ECF No. 13-2 at ¶ 5. Defendant states that she did not believe an EKG was needed because Baine had no history of serious cardiac issues and, at the time of his visit, he did not appear to be having any acute cardiac issue. *Id.*

On January 4, 2023, Baine saw a provider via telemedicine for chronic care for asthma, migraines, chronic back pain, and chest pain. ECF No. 13-3 at 22. Baine complained of intermittent chest pain and reported that he had chest pain a few days ago but was told everything was normal before being sent back to his cell. *Id.* The provider noted that Baine had undergone several EKGs and a chest x-ray, but all of the results had been within normal limits. *Id.* The provider also stated that Baine had no predisposing factors for heart disease, such as hypertension, diabetes, or hyperlipidemia. *Id.* at 24. The possible causes of chest pain were discussed with Baine, and he was assured that he did not have any serious etiology. *Id.*

## Standard of Review

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendant's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF No. 13. Motions styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp.2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Here, Baine was on notice that the Court could treat Defendant's Motion as one for summary judgment and rule on that basis. Thus, the Court will review Baine's claims under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motion.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir.

2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## Discussion

Baine asserts that Defendant was "neglectful" when she failed to conduct an EKG, as required by RCI protocol, while he suffered chest pains on December 29, 2022. ECF No. 1 at 4. Construed liberally, Baine raises a claim of deliberate indifference to his medical needs.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, Baine must demonstrate that Defendant's acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016).

After a serious medical need is established, a successful claim requires proof that the defendant was subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 842. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695-96; *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as "exacting"). A mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto*, 841 F.3d at 225. Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at *4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012). Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)). Additionally, where the seriousness of the injury is not apparent, a delay in treatment does not violate the Eighth Amendment. *Brown v. Comm'r of Cecil Cnty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent").

At the time of the incident in question, Baine did not appear to be suffering from a serious medical need. Although he had an abnormal ECHO four years prior and reported chest pain at 7/10 during the visit, Defendant noted that all of his vital signs were normal, he did not have a fever, he had a regular apical heart rate, and his respiration was even and unlabored. There is no evidence in the record to demonstrate that Baine had a serious medical need when he saw Defendant. Therefore, he has failed to satisfy the objective prong necessary to demonstrate deliberate indifference on Defendant's part.

Additionally, Baine's claim cannot succeed because he also fails to satisfy the subjective prong, having not shown that Defendant failed to provide the necessary care. As noted, Defendant performed a thorough evaluation on the day in question. Thus, it appears that she made a reasonable effort to address Baine's problems.

To the extent Baine claims that Defendant violated RCI policy by failing to conduct an EKG, such a claim does not rise to a constitutional violation. "Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met." *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 n.6 (D. Md. 2015) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996)), *aff'd*, 644 F. App'x 243 (4th Cir. 2016); *see also Jackson v. Sampson*, 536 F. App'x 356, 357-58 (4th Cir. 2013) ("any failure by prison officials to follow internal correctional policies is insufficient, without more, to support . . . claim" for deliberate indifference to a serious medical need). And, to the extent Baine disagrees with the course of treatment that Defendant implemented, such disagreement does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Lastly, as Baine has not shown that he was injured as a result of Defendant's action or inaction, no Eighth Amendment violation is apparent.

On this record, Baine has not shown deliberate indifference on the part of Defendant. Therefore, summary judgment shall be granted in Defendant's favor.[2]

---

[2] To the extent that Baine raises state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and thus will dismiss such claims, without prejudice. *See* 28 U.S.C. § 1367(c)(3).

## Conclusion

Defendant's Motion to Dismiss or Alternatively for Summary Judgment, construed as a Motion for Summary Judgment, is granted. Judgment is entered in favor of Defendant and against Baine. Baine's state law claims of medical malpractice and negligence are dismissed without prejudice.

A separate Order follows.

11-28-2023
Date

_____
LYDIA KAY GRIGGSBY
United States District Judge